UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06cv23-R

MARK L. CRAWFORD, M.D., P.S.C.,                                         PLAINTIFF

v.

CENTRAL STATE, SOUTHEAST AND
SOUTHWEST AREAS HEALTH AND
WELFARE AND PENSION FUNDS,                                              DEFENDANT

and

PRIVATE HEALTHCARE SYSTEMS, INC.                                        DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Private Healthcare Systems, Inc.'s ("PHCS") Motion for Summary Judgment (Docket #49). The Plaintiff, Dr. Mark Crawford ("Dr. Crawford") has responded (Docket #50) and the Defendant has replied to that response (Docket #51). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case concerns whether the Plaintiff may recover payment of his medical bills for his surgical treatment of patient Kitty Steele ("Steele") on August 28, 2002. Dr. Crawford is an orthopedic surgeon who practices in western Kentucky. Dr. Crawford alleges that prior to the surgery, Steele provided Dr. Crawford with three (3) different insurance cards; one that had been issued by co-Defendant Central States, Southeast and Southwest Areas Health and Welfare Pension Funds ("Central States"); one that had been issued by PHCS/Team Care; and one that was issued by Medicaid. PHCS claims that in actuality Steele only presented two (2) insurance

cards, and that one of the alleged cards was the front and back of the Central States insurance card. PHCS is the representative of Central States for the purposes of confirming insurance coverage and pre-certifying medical procedures; however, it is not an insurer.

Prior to performing the surgery on Steele, on August 2, 2002, Dr. Crawford's office, through its office manager, Michelle Crouch ("Ms. Crouch"), first contacted Central States (by using the information from its insurance card) to determine if Steele was covered and whether the planned procedure was necessary. Ms. Crouch testified that before Dr. Crawford performed any surgery, she would call the insurance carrier and inquire whether the patient had coverage, and if so, whether the planned procedure was medically appropriate. Central States informed Ms. Crouch that no coverage was in effect for Steele.

On August 9, 2002, Ms. Crouch then called the number on the PHCS/Team Care card and spoke to Tara Semenchuk ("Tara" or "Ms. Semenchuk") who is a customer service representative for PHCS. Ms. Crouch stated that she wrote down during her conversation with Ms. Semenchuk that "Tara" verified that coverage was available for Ms. Steele during August 2002. Based on this conversation, Dr. Crawford believed that Steele was covered, and therefore, performed surgery on her. Ms. Semenchuk states that her handwritten notes from that conversation have since been thrown away. In addition, she states that although she did advise Ms. Crouch that the planned procedure was medically appropriate, she denies advising that coverage was afforded.

On August 9, 2002, PHCS claims to have sent a letter to Dr. Crawford's office stating that the Plaintiff had notified PHCS about a four (4) day hospitalization, but that coverage was not guaranteed. Ms. Crouch stated that she may have opened the letter, but that she did not read

2

and/or understand the contents of the letters addressed to Dr. Crawford. Dr. Crawford states that he does not remember reading the letter. However, he testified that he would have performed the surgery regardless, based on the conversation between Ms. Crouch and Ms. Semenchuk.

After the surgery had been completed, the Plaintiff was advised by PHCS that Steele's coverage had lapsed in April 2002, before the date of the surgery, and Central States denied coverage. Dr. Crawford, along with Jackson Purchase Medical Center, appealed the denial, however, Central States ultimately concluded that coverage would not be afforded.

The Plaintiff initially brought this action in Graves County Circuit Court, seeking recovery against both Central States and PHCS for breach of oral contract and promissory estoppel. Central States filed a motion to remove the matter to this Court under federal question jurisdiction because the plan in question was an ERISA plan. After the matter was removed to federal court, PHCS filed a motion to dismiss arguing that the state law claims are preempted by ERISA and that PHCS should be dismissed with prejudice from the ERISA claim because an ERISA claim cannot be asserted against it as a party as it is not a part of the plan. The Court granted in part and denied in part the Defendant's Motion to Dismiss (Dockets #31 & #32), finding that the ERISA claim asserted against PHCS fails as a matter of law, but also finding that the state law claims for breach of oral contract and promissory estoppel could go forward at that time.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

 "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).

Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In its Motion for Summary Judgment, the Defendant contends that the promissory

estoppel claim should be dismissed because the Plaintiff could not have reasonably relied upon statements made during the August 9, 2002 telephone call.  In addition, the Defendant argues that the breach of oral contract claim should be dismissed because the alleged oral contract is unenforceable since the terms of the contract were not sufficiently definite to be enforced; PHCS did not have the authority to bind Central States to provide coverage; and the letter sent to the Plaintiff on August 9, 2002 terminated any alleged agreement.  The Court shall address each of these arguments separately.

### 1. Promissory Estoppel

Under Kentucky law, promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 549 (6th Cir. 2006)(citing *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F.Supp.2d 998, 1003 (W.D.Ky. 2004).  Here, the Defendant challenges the second element of promissory estoppel, arguing that the Plaintiff could not have relied upon the August 9, 2006 phone call because he should have known that Central States, not PHCS, was the only private insurance company that could provide coverage for Steele.  In addition, PHCS contends that because Dr. Crawford's reliance was based on a misunderstanding that Steele presented three (3) insurance cards instead of two (2), it was not reasonable for Dr. Crawford to rely upon the August 9, 2006 phone call.

In support of its argument the Defendant cites the Kentucky Court of Appeals case of *Rivermont Inn., Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003).  In

*Rivermont Inn*, the court addressed a fraud action brought by a hotel against a resort community. *Id.* at 639.  The court examined whether promissory estoppel could be invoked in that matter to defeat the statute of frauds defense asserted by the defendant. *Id.* at 642.  The court affirmed the decision of the circuit court that held promissory estoppel could not be invoked because "the element of reasonable reliance is missing." *Id.*  In reaching this decision, the Court stated that "[a] party cannot reasonably rely on oral statements when *it* has acknowledged in writing several times that oral statements are not binding and may not be relied upon." *Id.* (emphasis added). The court noted that defendant in that matter had "received acknowledgement [sic] in writing on more than one occasion from Rivermont[, the plaintiff,] that no oral promises are made with respect to the granting of licenses, Holiday could not reasonably expect that Rivermont would solicit an oral promise from one of its vice presidents and then change its position in reliance on such a promise." *Id.* 642-643.

Here, in contrast to *Rivermont Inn*, the Plaintiff never sent the Defendant anything in writing acknowledging that he would not rely upon an oral statement by the Defendant in regards to coverage.  In its motion, the Defendant misinterpreted the holding by the court in *Rivermont Inn*, as the language of the case states that the party who claims to rely upon oral statements cannot be said to have reasonably done so when *it*, as in the party, acknowledges in writing that oral statements are not binding and may not be relied upon; not that a party cannot reasonably rely on oral statements when it "***had been***" acknowledged in writing that oral statements are not binding and may not be relied upon. *See id.* at 642; Defendant's Motion for Summary Judgment, Docket #49 at pg. 11.  Accordingly, *Rivermont Inn* does not support the Defendant's argument.

6

The Defendant also argues that Dr. Crawford could not have reasonably relied upon the August 9, 2002 telephone call because: he had the PHCS Handbook that warned that PHCS did not guarantee coverage; the Agreement between the Plaintiff (as a member of the West Kentucky Physician Alliance) and PHCS states that there can be no oral modifications of the Agreement (PHCS notes that the Agreement incorporates the Handbook); and the letter sent by PHCS on August 9, 2002, which stated that PHCS does not guarantee coverage.  The Defendant asserts that based on this evidence no reasonable fact finder could decide that the Plaintiff had any justification to rely on the August 9, 2002 phone call, and therefore, PHCS is entitled to summary judgment on this issue.  However, the Court does not agree with the reasoning of the Defendant, as the Plaintiff has presented facts that contradict the arguments of the Defendant, and at the very least demonstrate genuine issues of material fact that should go before a jury.

Here, in looking at the evidence in a light most favorable to the non-moving party, in this case the Plaintiff, to determine whether or not Dr. Crawford could have reasonably relied upon the August 9, 2002 phone call, the facts indicate that the parties are in dispute as to whether Steele had two (2) or three (3) insurance cards.  While the Defendant has filed two (2) affidavits of Albert Nelson, an executive at Central States, which state that there were only (2) insurance cards, the Plaintiff has provided the testimony of Ms. Crouch and Anita Hayden ("Ms. Hayden"), the assistant business officer of Jackson Purchase Medical Center, who stated that Steele provided them with three (3) insurance cards (including Medicaid), not two (2).  This issue, which relates to whether or not Dr. Crawford reasonably relied upon the August 9, 2002 telephone conversation, should go before the finder of fact as the parties are in dispute as to whether two (2) or three (3) insurance cards were provided by Steele.  As noted by the

Defendant, this issue relates to whether or not Dr. Crawford could have reasonably relied upon the August 9, 2002 telephone conversation.

Further, there is conflicting testimony on other matters that relate to whether Dr. Crawford could have reasonably relied upon the telephone conversation for purposes of asserting his promissory estoppel claim. The parties dispute what exactly was said by Ms. Semenchuk concerning whether she informed Ms. Crouch that Steele was covered and the planned procedure was medically appropriate, or whether she just informed Ms. Crouch that the procedure was medically appropriate. This issue goes to the heart of the dispute between the parties, and it should go before the finder of fact. The Plaintiff supports his argument on this matter by noting that PHCS has a policy that requires customer service representatives, such as Ms. Semenchuk, to stop the inquiry once it is determined that the insured is not covered, yet PHCS still admits that it informed Ms. Crouch that the planned procedure was necessary. Based on this policy and facts surrounding the conversation, a reasonable fact finder could determine that Ms. Semenchuk may have stated that Steele was covered.

Lastly, Dr. Crawford has stated that because he receives so much conflicting information from insurance companies regarding coverage, he takes steps to ensure that the patient is covered before performing a surgery, especially the type of procedure he performed on Steele that involved a fusion with accompanying bone graft. He stated that he has his office contact the insurance group directly, rather than rely upon form letters, in order to determine whether a patient is covered. Further, Dr. Crawford is not absolutely certain when his office received the letter dated August 9, 2002 and/or if his office received it before the August 28, 2002 surgery because the letter was not date-stamped. Additionally, the Defendant has provided no direct

evidence to prove that the letter was sent to Dr. Crawford's office on August 9, 2002.

These facts and statements support the argument that Dr. Crawford could have reasonably relied upon the representations made to Ms. Crouch during the August 9, 2002 telephone conversation, at least so much that a fact finder could possibly find that Dr. Crawford relied upon them for purposes of promissory estoppel.

The Court finds that genuine issues of material fact exists regarding whether or not Dr. Crawford could have reasonably relied upon the alleged representations made during the August 9, 2002 telephone conversation. Accordingly, at this juncture, the Plaintiff's promissory estoppel claim shall go forward.

## 2. Breach of Oral Contract

Here, the Defendant contends that the alleged oral contract is unenforceable because: the terms of the alleged agreement are not sufficiently definite; PHCS did not have the authority to bind Central States to provide coverage; and the August 9, 2002 letter terminated any alleged agreement between the Plaintiff and PHCS. The Plaintiffs counters these arguments, contending that it is not necessary, in the context of providing medical services, to be specific in regards to the services rendered. Further, the Plaintiff argues that PHCS cannot escape liability by asserting it has no agency authority because PHCS made a coverage determination and should be bound by it. Lastly, the Plaintiff asserts that PHCS' letter did not terminate the oral contract because Dr. Crawford and Ms. Crouch stated that they did not see the letter, and therefore, Dr. Crawford did not rely upon the letter's disclaimers.

In addressing the Defendant's first argument that the terms of the alleged contract between Dr. Crawford and PHCS were not sufficiently definite, the Court cannot state with

9

certainty what was spoken between Ms. Crouch and Ms. Semenchuk.  In addition, the Defendant has not alleged what terms were missing from the alleged oral agreement, but has only stated that the Plaintiff has not alleged any term was ever discussed.  However, both parties admit that the four (4) day length of stay was discussed, while the parties are in dispute about the remaining context of the conversation, which may include details of the coverage and terms of an agreement.  Accordingly, at this juncture, the Court cannot sustain this argument because the Court cannot state with certainty what terms, if any, were discussed, and to what depth the terms of the alleged contract were addressed by Ms. Crouch and Ms. Semenchuk.

In reviewing the second argument put forth by the Defendant, in order for PHCS to have the authority to "bind coverage" on behalf of Central States, there must have been an agreement between PHCS and Central States for PHCS to enter into insurance contracts on Central States' behalf. *See Yates v. Transamerica Ins. Co., Inc.*, 928 F.2d 199, 200 (6th Cir. 1991); *see also Savannah Sugar Refinery, Division of Savannah Foods and Industries, Inc. v. RC Canada Dry Bottling Co., Division of Beatrice Foods Co.,* 593 S.W.2d 880, 883 (Ky. App. 1979)(holding that "[t]he principal must affirmatively hold the agent out to the public as possessing sufficient authority to modify the contract, or else voluntarily, and with due awareness, permit the agent to act as if he has the required authority. *The person claiming reliance on an agent's apparent authority must take heed to warnings and inconsistent circumstances*")(emphasis added); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1381-82 (W.D. Ky. 1987).

Here, the Plaintiff has not provided nor cited any evidence that shows PHCS had the authority to bind coverage on behalf of Central States or that there was an agreement between PHCS and Central States to do so.  In fact, the evidence suggests that both PHCS and Central

States made efforts to clarify their respected positions with their clients, in as far as determining what patients were eligible under the plan. Central States issued statements that PHCS only had the authority to certify medical necessity, but not to determine coverage. As such, PHCS did not have the authority to bind Central States to provide coverage.

In addition, even assuming that PHCS did have such authority, Dr. Crawford's office could not have reasonably believed that PHCS had the authority to bind Central States because his office had contacted Central States concerning the coverage of Ms. Steele prior to contacting PHCS and his office was informed by Central States that Ms. Steele was not covered. After Central States informed his office that Steele did not have coverage, Dr. Crawford could not have relied upon a representation by PHCS that Central States would provide coverage to Ms. Steele because it would have been inconsistent to assume an agent could bind the principal *after* the principal had explicitly denied coverage.

Accordingly, PHCS did not have the authority to bind Central States to provide coverage, and even if it did, the Plaintiff could not have relied upon that representation after Central States had explicitly denied coverage. As such, an oral agreement between PHCS and Dr. Crawford could not have been formed during the August 9, 2002 telephone conversation, and therefore, the Court finds there was no oral contract between the parties.[1]

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket #49) is **GRANTED in part** and **DENIED in part**. The Plaintiff's promissory estoppel claim shall go

---

[1] The Court does not need to address the third argument set out by the Defendant as that argument is premised on the fact that an oral contract was formed between the parties, and as determined *supra*, no oral contract was formed between the parties.

11

forward at this time, while the Plaintiff's breach of oral contract claim fails as a matter of law.

An appropriate order shall issue.